# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 20-2045V

SHANA MCDADE,

              Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

             Respondent.

Chief Special Master Corcoran

Filed: July 19, 2024

*Amy A. Senerth, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Jamica Marie Littles, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM[1]

On December 30, 2020, Shana McDade filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") following an influenza ("flu") vaccine she received on November 5, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

Although the record supports the conclusion that Petitioner likely suffered the residual effects of her alleged injury for more than six months, Petitioner's Table SIRVA

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

claim must still be dismissed. Petitioner's symptoms were not limited to the vaccinated shoulder, and that there is evidence of a condition (other than SIRVA) that would explain her symptoms. This may leave a causation-in-fact claim to be adjudicated, however.

## I.    Relevant Procedural History

On December 19, 2022, just under two years after the case was initiated, Respondent filed a Rule 4(c) Report arguing that Petitioner had not established entitlement to compensation. ECF No. 30. In particular, Respondent argued that Petitioner could not establish that she suffered the residual effects of her injury for more than six months – the Act's "severity requirement." Rule 4(c) Report at 7-8. Respondent also argued that Petitioner's claim for a Table SIRVA must fail because "another condition or abnormality was present that would explain her left arm symptoms" and "her symptoms were not limited to the left shoulder in which the vaccine was administered." Rule 4(c) Report at 8-10.

I ordered the parties to brief the issue of whether Petitioner has satisfied the severity requirement. Petitioner filed her Motion for Ruling on the Record ("Mot.") on June 15, 2023. ECF No. 35. Respondent filed a response ("Resp.") on August 14, 2023. ECF No. 41. The matter is now ripe for decision.

## II.    Factual History

Petitioner, a nurse, received the flu vaccine in her left deltoid on November 5, 2019. Ex. 1 at 1. Seventeen days later, she saw her primary care physician ("PCP") for left arm pain. Ex. 2 at 3. She described "immediate shooting pain and numbness in [her] fingers while the injection was being given" and "burning pain in [the] entire extremity when [the] vaccine needle was inserted deep." *Id*. at 3-4. The doctor noted that Petitioner's symptoms began "in the last three weeks after receiving a flu vaccine in the left arm." *Id*. at 4. On exam, Petitioner had reduced range of motion in her left elbow, wrist, and hand, and pain and weakness at her elbow. *Id*. at 3. She was assessed with "possible brachial neuritis secondary to flu vaccine injection," prescribed neurontin, and referred to a neurologist and for physical therapy. *Id*. at 3-4.

Petitioner had an initial physical therapy evaluation on December 5, 2019. Ex. 3 at 31. The referring diagnosis was "left arm distal neuropathic pain, possible brachial neuritis." *Id*. Petitioner reported that her pain began "3 weeks ago (Nov 2019) following a flu shot" and that her pain was "severe from shoulder to elbow." *Id*. The plan of care included treatments 2-3 times per week for eight weeks. *Id*. at 33. Petitioner attended three additional physical therapy appointments on January 2, 2020, January 7, 2020, and March 11, 2020. *Id.* at 11, 17, 19. At her last visit, Petitioner continued to complain of left

arm pain and stiffness. *Id*. at 11. Her status was "progressing" and she was not discharged from treatment. *Id*. at 12.

Petitioner states that she learned of the International Sports Science Association ("ISSA"), and an in-home physical therapist associated with ISSA named Joseph Dorn, from a friend. Ex. 13 at ¶5. She had a physical therapy evaluation with Mr. Dorn on March 2, 2020. Ex. 4. During her evaluation, Petitioner reported left arm pain, "with periodic spasms down the arm," following her flu shot. *Id*. at 2. She reported difficulty performing her work duties as a registered nurse and sleep disturbances. *Id*. Mr. Dorn assessed Petitioner with "deltoid bursitis," and proposed a treatment plan spanning several weeks "or longer." *Id*. at 3. Mr. Dorn indicated the "therapy start date" as March 2, 2020, and the "therapy end date" as December 28, 2020. *Id*. at 6. Petitioner decided to continue her treatment with him rather than continuing her prior physical therapy treatment. *Id*. at ¶5-7.

Petitioner states that she continued having physical therapy sessions with Mr. Dorn in her home through August 2020. Ex. 13 at ¶8. She provided receipts indicating payments of $150.00 per session for the following dates of service: March 2, 2020 (the date of the evaluation), March 3, 2020, March 16, 2020, April 6, 2020, April 2020 (no day given), April 27, 2020, May 4, 2020, May 11, 2020, May 25, 2020, June 8, 2020, June 15, 2020, June 22, 2020, July 6, 2020, July 13, 2020, July 20, 2020, August 3, 2020, August 10, 2020, and August 24, 2020. Ex. 8 at 3-21. Petitioner also provided two invoices for physical therapy – dated March 3, 2020 and August 24, 2020 – that indicate both that Mr. Dorn worked for ISSA and provided "mobile physical therapy." *Id*. at 1-2.

There are no additional records of treatment for Petitioner's left arm pain.

### III.    Applicable Legal Standards

The Vaccine Act requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act § 11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. § 13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment,

test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La*

*Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.    Findings of Fact

### A.  *Severity*

To satisfy the Act's severity requirement, Ms. McDade must demonstrate that she continued to suffer the residual effects of her vaccine-related injury until at least May 5, 2020 - six months after her likely post-vaccination onset. There is no dispute that Petitioner consistently sought treatment through the end of her first course of physical therapy on March 11, 2020 – just over four months after her vaccination. Respondent argues that there is "no objective or contemporaneous evidence that establishes that PT Dorn provided in-home post-vaccination PT services to Petitioner." Resp. at 7. In support, Respondent highlights the fact that Petitioner has not provided individual treatment notes from Mr. Dorn, and that there is no independently-authenticated evidence of his treatment. Rule 4(c) Report at 7. Respondent also notes that Mr. Dorn provided a signed certification that he had no records responsive to Petitioner's medical records request. Mot. at 6.

This argument suggests, incorrectly, that petitioners may rely only on independently authenticated evidence, even when such evidence is not available. But the Vaccine Program considers a wide array of evidence – and even though reliability can be impacted by questions of authenticity, here those questions have answers. This is because Petitioner's counsel filed an affidavit outlining her attempts to obtain medical records from Mr. Dorn. Ex. 14. Counsel noted that she was told that Mr. Dorn was having health problems and was no longer operating his business. *Id*. at ¶3. Thus, the simple fact that Mr. Dorn did not possess copies of these records at the time he signed the certification in 2021 does not require the conclusion that the documents provided by Petitioner are not reliable, or that she did not continue to have treatment for her left arm pain after March 11, 2020.

Otherwise, Petitioner has documented the treatment she received from Mr. Dorn, and when it occurred. *See* Ex. 4, 8. While additional evidence could be helpful, the records filed by Petitioner, at a minimum, suggest that she continued treatment with Mr. Dorn through August 24, 2020, which is more than six months after onset. Ex. 8. Petitioner provided a plan of care from Mr. Dorn, dated March 2, 2020, which recommended 20 treatments and indicated that treatment could continue as long as December 28, 2020.

Ex. 4 at 3, 6. Thereafter, she provided receipts from Mr. Dorn that document a series of appointments without significant gaps - 18 visits over a six-month period - suggesting that treatment largely followed the documented treatment plan. Ex. 4; Ex. 8 at 3-21. Petitioner further stated that she preferred the in-home therapy because it was more convenient and provided one-on-one attention that she felt was not provided by her previous physical therapist. Ex. 13 at ¶7. Other than the fact that Mr. Dorn himself did not provide any treatment records in response to the medical records request, there is no evidence in the record that Petitioner did not receive the treatment alleged.

As a result, the evidence supports a finding that severity was established. At most, the lack of detail about the specific treatment Petitioner received during the period between March 11 - August 24, 2020, could impact what the proper pain and suffering calculation should be.

    B.    *Table Claim*

Despite my severity finding, there are greater problems with the Table claim in this case. The medical records reveal, and Petitioner does not dispute, that Petitioner complained of symptoms t*hroughout* her left upper extremity – her shoulder plus her elbow, wrist, hand, and fingers, and was also diagnosed with (and treated for) a nerve injury. Mot. at 2. At her first medical appointment, Petitioner had reduced range of motion in her elbow, wrist, and hand and weakness and pain in her elbow. Ex. 2 at 3. She was assessed with brachial neuritis, given a prescription for neurontin, and referred to a neurologist and for physical therapy. *Id*. at 4. When she began physical therapy, Petitioner described "severe pain from [her] shoulder to her elbow." Ex. 3 at 31. She had reduced range of motion and strength in both her shoulder and elbow on exam. *Id*. at 32.

Because the medical records reveal both that Petitioner's symptoms were not limited to her vaccinated shoulder and that there was another condition present that could explain her symptoms, Petitioner cannot preponderantly establish the third or fourth QAI for a Table SIRVA. The claim can only proceed as a causation-in-fact claim (and may in fact be more properly advanced as a claim for brachial neuritis after receipt of the flu vaccine).

**Conclusion**

Petitioner has established that she suffered the residual effects of her alleged vaccine-related injury for at least six months. However, as I also find that Petitioner cannot succeed on a Table claim, Petitioner's Table SIRVA claim is dismissed. The case will be

reassigned to a Special Master outside of the Special Processing Unit ("SPU"), for adjudication as a causation-in-fact claim.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master